IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 22-20043-01-DDC |
| BRYCE HUGHES (01), | |
| Defendant. | |

**MEMORANDUM AND ORDER**

Defendant Bryce Hughes filed a Motion to Suppress (Doc. 27), asking the court to suppress "the gun and all other fruit of the warrantless search" of his car. *Id.* at 4. The government filed a Response to that motion (Doc. 28). The court then held an evidentiary hearing on March 10, 2023. After hearing the evidence adduced at that hearing, Mr. Hughes sought leave to file a supplemental brief to address an argument not made in his initial motion: that Deputy U.S. Marshal Galaska illegally searched Mr. Hughes's vehicle by touching the vehicle as he peered through its windshield. The court granted Mr. Hughes leave to file a supplemental brief, and he now has done so (Doc. 35). The government has responded (Doc. 38).

This Order decides the issues presented by defendant's motion, denying Mr. Hughes's Motion to Suppress (Doc. 27). The court explains its reasoning for this decision, below.

**I.    Background**

The court took evidence during the March 10 hearing, and unless otherwise noted, derives the following factual findings from evidence presented at that hearing.

Defendant Bryce Hughes's Motion to Suppress (Doc. 27) centers on Deputy U.S. Marshals' allegedly unlawful search of his vehicle and seizure of a firearm found inside it. Several years before the events at issue here, Mr. Hughes pleaded guilty to a federal drug offense. Then, during his supervised release, Mr. Hughes violated his release conditions, and United States District Judge Beth Phillips, Chief Judge in the Western District of Missouri, issued a warrant for his arrest.

The Marshals decided to arrest Mr. Hughes in a business parking lot. Mr. Hughes arrived at the parking lot driving Ms. LaToya Summerville's car; earlier that morning, she had given Mr. Hughes permission to drive it. After Mr. Hughes got out of the car, the Marshals arrested him. Deputy Galaska then conducted a standard post-arrest procedure: he walked around the car and looked into it to see whether contraband was present in the car. Seeking a better vantage point of the car's interior, Deputy Galaska stood over the hood of the car, inadvertently leaned against the vehicle, and looked through the windshield on the driver's side. Deputy Marshal Galaska spotted a gun placed partially under the driver's seat. And knowing that Mr. Hughes was a convicted felon, he entered the vehicle and confirmed a gun was present there. After that confirmation, Deputy Galaska called in ATF Officer Brian Granger to process the gun. Granger also photographed the vehicle's interior from the same vantage point Deputy Galaska had occupied—above the hood, the camera's lens shooting through the front window on the driver's side. Officer Granger testified that he probably touched the car to stabilize himself while leaning over the hood. Following these events, the government charged Mr. Hughes with one count of felon in possession of a firearm.

II. **Analysis**

Mr. Hughes has standing for his Fourth Amendment challenge because, even though the car belonged to Ms. Summerville, he had lawful control of it. But then Mr. Hughes's position

founders: although Deputy Galaska didn't have a warrant to search the car or seize Mr. Hughes's firearm, the contested search and seizure are constitutional under the plain-view exception.

### A. Standing

Although Deputy Marshal Galaska searched Ms. Summerville's vehicle—not Mr. Hughes's—Mr. Hughes nevertheless has standing to raise this Fourth Amendment challenge because he had a cognizable Fourth Amendment interest in the car. To mount a Fourth Amendment challenge, a defendant must first show "a cognizable Fourth Amendment interest in the place searched[.]" *Byrd v. United States*, 138 S. Ct. 1518, 1530 (2018). In other words, the defendant must establish "Fourth Amendment 'standing.'" *Id.* A defendant can establish the requisite standing by showing that he had a reasonable expectation of privacy in the place searched. *See id.* at 1527. And a defendant can establish a reasonable expectation of privacy in a vehicle by showing that he had "a 'legitimate possessory interest in or lawful control over the car.'" *United States v. Allen*, 235 F.3d 482, 489 (10th Cir. 2000) (quoting *United States v. Gama-Bastidas*, 142 F.3d 1233, 1239 (10th Cir. 1998)). But when the defendant is the car's driver but not its registered owner, the defendant "bears the burden of establishing 'that he gained possession from the owner or someone with the authority to grant possession.'" *United States v. Eckhart*, 569 F.3d 1263, 1274 (10th Cir. 2009) (quoting *United States v. Valdez Hocker*, 333 F.3d 1206, 1209 (10th Cir. 2003)). And this generally requires "a link between himself and the registered owner." *Id.* at 1275.

Here, Mr. Hughes has standing because he has established that requisite link. At the evidentiary hearing, Ms. Summerville testified that she owned the car in question and had given Mr. Hughes permission to drive it to the parking lot where Mr. Hughes parked it. Because Mr. Hughes had Ms. Summerville's permission to drive the vehicle, Mr. Hughes had lawful control

3

of the car.  Under *Allen* and *Eckhart* and other similar cases, Mr. Hughes has established a reasonable expectation of privacy in the car.  He thus has standing to raise this Fourth Amendment challenge.

### B. Plain-View Exception

Although Deputy Galaska entered the vehicle and seized Mr. Hughes's gun without a warrant, the search and seizure are constitutional under the plain-view exception to the warrant requirement.  Once the defendant shows that a warrantless search occurred—and unquestionably one did here—the burden then shifts to the government to show that the warrantless search was "justified [by an exception]."  *United States v. Chavez*, 985 F.3d 1234, 1240 (10th Cir. 2021) (quoting *United States v. Neugin*, 958 F.3d 924, 930 (10th Cir. 2020)).  Since the parties agree that Deputy Galaska searched Mr. Hughes's vehicle and seized his firearm without a warrant, s*ee* Doc. 27 at 1 & Doc. 28 at 3, the government bears the burden to justify its warrantless search and seizure.  The government here claims that its warrantless entry into Mr. Hughes's car and subsequent seizure of the gun falls within the plain-view exception.  The court agrees.

Under the plain-view exception, an officer may "seize evidence in plain view without a warrant."  *Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971).  This exception is available if "(1) the officer was lawfully in a position from which the object seized was in plain view, (2) the object's incriminating character was immediately apparent . . . and (3) the officer had a lawful right of access to the object."  *United States v. Johnson*, 43 F.4th 1100, 1110 (10th Cir. 2022) (quoting *United States v. Thomas*, 372 F.3d 1173, 1178 (10th Cir. 2004)).  The government established all three requirements here.

*First*, Deputy Galaska viewed the firearm from a lawful position.  After arresting Mr. Hughes, Deputy Galaska conducted an exterior examination of the vehicle.  Deputy Galaska testified that during the walkaround, he stood over the car's hood and peered down into the

driver's side windshield. There on the floorboard, he saw Mr. Hughes's firearm. He viewed the firearm from the parking lot, outside the car, a place where he lawfully was permitted to occupy. Deputy Marshal Galaska therefore viewed the firearm from a lawful position.

Mr. Hughes tried to convince the court of the opposite conclusion. He argues that while performing the walkaround and looking into the driver's side windshield, Deputy Galaska might have touched the vehicle—either by leaning on the car's hood or by cupping his hands against the window. According to Mr. Hughes, if that contact occurred, it amounted to a warrantless search under the trespass theory endorsed in *United States v. Jones*, 565 U.S. 400 (2012). And without a warrant, Deputy Galaska therefore was not in a lawful position when he viewed the firearm. Deputy Marshal Galaska's prior unconstitutional touching of the vehicle, in Mr. Hughes's view, negates the plain-view exception.

The court rejects this argument. To begin with, the court determines that Mr. Hughes—not the government—bears the burden to show that Deputy Galaska's touching of the car's exterior implicates Mr. Hughes's Fourth Amendment interests. It's true that the government bears the burden to show that a warrantless search falls within a warrant exception. But it's also true that before challenging the lawfulness of an officer's search, the defendant—not the government—bears the burden to show that the officer's conduct implicates defendant's Fourth Amendment interests. *See United States v. Marchant*, 55 F.3d 509, 512–513 (10th Cir. 1995) (holding that defendant must establish that a search implicated defendant's Fourth Amendment interests before challenging the lawfulness of a search); *see also United States v. Dixon*, 546 F. Supp. 2d 1198, 1202 (D. Kan. 2008) (noting that defendant can challenge a search "only if the defendant can demonstrate" that the search violated his Fourth Amendment rights). So when, as here, a defendant attempts to neutralize the plain-view exception by arguing that a prior

5

unconstitutional search occurred, the defendant bears the burden to show that the search implicated his Fourth Amendment interests.

Mr. Hughes fails to carry that burden: he has not established that Deputy Marshal Galaska effected a trespass-based search of Mr. Hughes's vehicle. Mr. Hughes suggests that Deputy Galaska effected a trespass-based search in two possible ways: either (a) by leaning on the car's hood while looking into the vehicle, or (b) by cupping his hands to the windshield in aid of his efforts to look inside the vehicle.

First, the car leaning: The evidence adduced at the evidentiary hearing established that Deputy Galaska's leaning against was not intentional, but inadvertent. Inadvertently leaning on a car does not constitute a trespass-based search under *Jones*. *Jones*'s trespass theory recognizes that a trespass occurs when the trespass is made *for the purpose of obtaining information*. *United States v. Jones*, 565 U.S. 400, 408 n.5 (2012) ("A trespass . . . is not alone a search unless it is done to obtain information[.]"); *see also United States v. Richmond*, 915 F.3d 352, 357 (5th Cir. 2019) (holding that to qualify as a trespass-based search, the trespass "must be conjoined with an attempt to find something or obtain information" (citation and internal quotation marks omitted)). In *Jones*, federal law-enforcement officials attached a GPS tracking device to the undercarriage of defendant's car. And they did so for a specific purpose: to procure information about defendant's physical location. The Supreme Court held that such conduct constituted a search because "[t]he Government physically occupied private property for the purpose of obtaining information." *Jones*, 565 U.S. at 404. But the physical intrusion in *Jones* is a far cry from Deputy Galaska's inadvertent leaning against the car at issue here. While *Jones* evaluated *intentional* contact, the court here deals with *unintentional* contact. And unintentional contact— by its very definition—occurs with no purpose at all, let alone for the purpose of obtaining

6

information.  Inadvertent contact with a vehicle therefore does not constitute a trespass-based search under *Jones*.  Because Deputy Galaska's leaning against the car was inadvertent, it did not occur for the purpose of obtaining information, and it thus did not constitute a trespass-based search under *Jones*.[1]

Second, the hand cupping.  Even if cupping one's hands against a car's windshield constitutes a trespass-based search, Mr. Hughes has not carried his burden to show that Deputy Marshal Galaska actually cupped his hands to Mr. Hughes's windshield.  During the Deputy's testimony, he testified that he didn't touch the car but couldn't remember that fact with 100% certainty.  Mr. Hughes's argument takes that uncertainty and runs with it.  Mr. Hughes urges the court to find a Fourth Amendment violation because "[Deputy Galaska] was unable to definitively say whether or not he was touching the car[.]"  Doc. 35 at 7.  At best, Mr. Hughes's argument rests on a mere possibility that Deputy Galaska cupped his hands to the windshield.  But Mr. Hughes offers no positive evidence to support his assertion that the cupping/touching actually occurred.[2]  But pointing to that mere possibility is not enough for Mr. Hughes to carry his burden.  In the end, Mr. Hughes fails to establish either that (a) inadvertently leaning against a vehicle constitutes a trespass-based search or (b) Deputy Galaska cupped his hands against Mr. Hughes's windshield.  Mr. Hughes therefore cannot carry his burden to show that Deputy Galaska unconstitutionally searched his vehicle by touching the vehicle.

---

[1]    There is, perhaps, a more basic reason why unintentional contact cannot constitute a trespass-based search:  Common-law trespass—which *Jones* used to support its holding under the Fourth Amendment—requires intent.

[2]    Mr. Hughes urges the court to consider that Deputy Galaska "found it necessary to use a flashlight" to illuminate the car and that Agent Granger "maybe" leaned against the car.  Doc. 35 at 8. But why those observations—individually or collectively—suggest that Deputy Galaska cupped his hands against the windshield escapes the court.

*Second*, the firearm's incriminating character was immediately apparent. When officers know that a defendant is a convicted felon (and thus prohibited from possessing firearms), a firearm's presence in a vehicle driven by the defendant takes on an incriminating character that is immediately evident. *See, e.g.*, *United States v. Wheaton*, 337 F. Supp. 3d 1107, 1117 (D. Kan. 2018) ("While the gun, by itself, is not incriminating, the presence of the gun, coupled with the knowledge that Defendant was a felon, is."). The Marshals had probable cause to believe the firearm was evidence of a crime because they knew that Mr. Hughes was a felon. Before executing Mr. Hughes's arrest warrant, Deputy Galaska had reviewed Mr. Hughes's records—and some of them showed that Mr. Hughes was a felon. And as a felon, it was unlawful for him to possess the firearm.

*Third*, the seizing Marshal had lawful access to the firearm. An officer has lawful access to the interior of a vehicle when the officer sees evidence of a crime located within that interior. *See id.* (holding that officers had lawful right to access vehicle after seeing gun in felon's vehicle). This kind of lawful access is generally upheld as a combination of the plain-view and automobile exceptions. *See United States v. Sparks*, 291 F.3d 683, 690–91 (10th Cir. 2002). In practice, this means that "if an officer has lawfully observed an object of incriminating character in plain view in a vehicle, that observation . . . alone . . . [is] sufficient to allow the officer to conduct a probable cause search of the vehicle." *See id.* at 690. Here, as concluded above, Deputy Marshal Galaska lawfully saw the firearm in Mr. Hughes's vehicle. That sighting gave the Deputy Marshal probable cause to search Mr. Hughes's vehicle.

Because (1) Deputy Marshal Galaska observed the firearm from a lawful position, (2) the firearm's incriminating character was immediately apparent, and (3) Deputy Galaska had lawful access to the firearm, his search of the vehicle and seizure of the firearm were reasonable under

the plain-view exception to the warrant requirement. Therefore, both Deputy Galaska's search and his seizure were constitutional acts.

### III. Conclusion

For the reasons explained above, the court denies Mr. Hughes's Motion to Suppress.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion to Suppress (Doc. 27) is denied.

**IT IS SO ORDERED.**

**Dated this 10th day of May, 2023, at Kansas City, Kansas.**

<u>s/ Daniel D. Crabtree</u>
**Daniel D. Crabtree**
**United States District Judge**